UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALONDRA PLYMIRE,

          Plaintiff,

      v.                                    Case No. 20-CV-574

KILOLO KIJAKAZI,[1]
**Acting Commissioner of the Social Security Administration,**

          Defendant.

## DECISION AND ORDER

**1. Introduction**

Alleging that she has been disabled since March 15, 2015 (Tr. 15), plaintiff Alondra Plymire seeks supplemental security income. After her application was denied initially (Tr. 66-80) and upon reconsideration (Tr. 81-101), a hearing was held before Administrative Law Judge (ALJ) Dean Syrjanen on March 7, 2019 (Tr. 31-65). On April 12, 2019, the ALJ issued a written decision, concluding that Plymire was not disabled. (Tr. 12-30.) After the Appeals Council denied Plymire's request for review on March 2, 2020

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

(Tr. 1-6), she filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 6), and this matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled, an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). The ALJ found that "[t]he claimant has not engaged in substantial gainful activity since March 23, 2017, the application date." (Tr. 17.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.922(a). The ALJ concluded that Plymire has the following severe impairments: "bipolar disorder, anxiety disorder, and post-traumatic stress disorder." (Tr. 17.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R.

§§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 416.920(e). The ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 17.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. § 416.945(a). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Plymire has the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is capable of performing simple, routine and repetitive tasks. The claimant is limited to understanding, remembering, and carrying out no more than simple instructions. She is capable of performing low stress work, defined as jobs with no inflexible or fast-paced production requirements, involving only simple work related decision making, and no more than occasional changes in work setting. The claimant is limited to jobs with tasks that are performed independently and involve no more than occasional interaction with supervisors, coworkers, and no more than incidental contact with the public.

(Tr. 19.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work.

20 C.F.R. §§ 416.920(a)(4)(iv), 416.960. The ALJ concluded that Plymire had no past relevant work. (Tr. 24.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c). At this step the ALJ concluded that there were jobs that Plymire could perform, including laundry worker (Dictionary of Occupational Titles (DOT) Number 361.687-018), dishwasher (DOT Number 318.687-010), and sorter (DOT Number 526.687-010). (Tr. 24.) Therefore, Plymire was not disabled.

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence

supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

4. Analysis

   4.1. Symptom Severity

"In determining whether an individual is disabled, [the ALJ must] consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p. The ALJ must assess the individual's symptoms—*i.e.*, "the individual's own description or statement of his or her physical or mental impairment(s)"—using a two-step process. SSR 16-3p. First, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p. If step one is satisfied, at step two the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities …." SSR 16-3p. In addition to considering all other relevant evidence, the ALJ must also consider the following factors to the extent they are relevant:

   1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. Although the court is not assessing the claimant's character or truthfulness, SSR 16-3p, this evaluation was previously characterized as a "credibility" assessment, *see* SSR 96-7p, and that language persists in the caselaw. *See, e.g.*, *Hinds v. Saul*, 799 F. App'x 396, 400 (7th Cir. 2020); *Brian J. v. Saul*, 438 F. Supp. 3d 903, 908 (N.D. Ill. 2020). The ALJ's conclusion is entitled to "special deference," and the court may disrupt it only if that assessment was "patently wrong."

*Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017).

The ALJ gave various reasons for his conclusion that Plymire's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record …." (Tr. 21.) He noted that Plymire suffered similar mental health problems "at the time she was working as an interpreter at above the substantial gainful activity level." (Tr. 21.) He continued, "Notably, the claimant stopped working due to pregnancy and not her mental health conditions." (Tr. 21.)

The ALJ also found Plymire's complaints about "decreased memory, concentration, multiple bad days per week, and fatigue requiring she nap for multiple hours during the day" inconsistent with her "having presented to her care providers with her memory intact, good concentration and attention, goal-related thought, oriented, and good judgment and responding positively to medication to help her sleep." (Tr. 21.) The observations of a consultative examiner were consistent with those of her health care providers, although the consultative examiner had to remind her to try her best during the examination. (Tr. 21-22.)

As regards Plymire's reported need to nap, the ALJ stated:

although the claimant reported to her providers that she was having difficulty sleeping, she never reported significant fatigue or the need to take

naps throughout the day. In fact, the records during the relevant period contain only one report of fatigue, and during that appointment, the claimant specifically indicated that she avoided napping. There is no objective evidence to support that the claimant's testimony of multiple hour naps each day are medically necessary or even documented elsewhere in the records. Moreover, throughout the period in question including the times the claimant report sleep disturbances, regularly conducted objective examinations revealed she was continuously alert and oriented with intact attention, concentration and memory.

(Tr. 22.)

The ALJ also noted that Plymire's "daily activities, including the full time care for her child, suggest the claimant is capable of greater functioning then what she has alleged." (Tr. 22.) Overall, the ALJ concluded that, following Plymire's psychiatric hospitalization, "the treatment history demonstrates an overall upward trend regarding the claimant's mental health conditions." (Tr. 22.)

Plymire argues, "None of these are 'good reasons,' as they tend to (grossly) misconstrue the Record." (ECF No. 17 at 6.) She states that the ALJ was wrong when he stated that she was working at the substantial gainful activity level; she worked part-time, only about 14 hours per week. But, more significantly, her impairments got worse after the birth of her son in December 2015, starting with post-partum depression and spiraling from there. (ECF No. 17 at 8.) She argues that the ALJ ignored "entire lines of evidence that detract from his conclusions." (ECF No. 17 at 8.)

Plymire walks through the specific evidence that the ALJ cited to support his conclusion that Plymire's symptoms were not as severe as she alleged. (ECF No. 17 at 8-

11.) She notes that, within the medical record from which the ALJ plucked each relevant fact, there are often other facts that could corroborate Plymire's symptoms. For example, the ALJ noted, "Progress notes dated August 18, 2017, indicate the claimant was sleeping very well (16F/4)." (Tr. 21.) The note in its entirety states:

> Patient called stating that for the last week and a half she has been experiencing "mood swings". Reports she is easily frustrated, and "very sensitive, I can cry for the simplest reason". She will be happy "then all of a sudden crying" then "isolates" herself and thinks "maybe I should not be on this earth" then she is okay again. Denies any plan or intent to harm herself. Reports compliance with medications. Sleeping "well" 8-9 hours at night. Denies excessive energy at this time.

(Tr. 926.)

It is well-established that an ALJ cannot consider only the evidence that supports his conclusion and ignore the evidence that undermines it. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). But, on the other hand, an ALJ need not discuss every piece of evidence in the record. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Thus, it is often a fine line between impermissible cherry-picking, *see Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010), and an appropriate summarization of the evidence.

A summary of evidence will necessarily be incomplete. An ALJ does not err merely because he fails to mention evidence that might be inconsistent with his conclusion. Impermissible cherry-picking requires more—*e.g.*, a sweeping and systemic disregard of contrary evidence or a failure to consider an entire line of evidence. Although

an assessment of the severity of the claimant's symptoms will require *consideration* of all the evidence, *see* SSR 16-3p, an ALJ is not required to *discuss* all the evidence.

As reflected in his RFC finding, the ALJ found that Plymire had significant limitations. In so finding, the ALJ did not categorically ignore or reject the evidence of Plymire's impairments. Rather, he found that Plymire's symptoms were not as severe as she alleged. In reaching that conclusion, the ALJ naturally highlighted the evidence inconsistent with Plymire's complaints. Plymire has failed to demonstrate that the ALJ engaged in impermissible cherry-picking; highlighting the evidence was that was inconsistent with her reported symptoms was simply the nature of that phase of the analysis. The ALJ reasonably noted, for example, that if Plymire's memory and concentration were as bad as she alleged, her health care providers likely would have at least occasionally noted memory and concentration problems in their treatment notes. (Tr. 21.)

The only specific symptoms that the ALJ categorically rejected were those of "significant fatigue" and "the need to take naps throughout the day." (Tr. 22.) The fact that Plymire naps does not establish that she *needs* to nap. Many people would choose to take daily naps if circumstances permitted. For example, much of the evidence Plymire cites to support her napping comes from when she was confined in a psychiatric hospital. (ECF No. 17 at 13.) Plymire has not pointed to evidence suggesting a need to nap, such as evidence that the absence of a nap exacerbates her symptoms. Thus, it may have been

reasonable for the ALJ to say there was no evidence that it was medically necessary for Plymire to nap daily.

However, the ALJ was incorrect when he stated that only once during the relevant period did Plymire report fatigue. Shortly after the end of her psychiatric hospitalization, she cited the fact that "my medications are making me sleepy" as the reason she wanted to apply for disability. (Tr. 666.) Subsequently, she regularly reported tiredness, which she generally attributed to her medications. (*See* ECF No. 17 at 13-14.) It is unclear if the ALJ rejected this evidence or simply overlooked it. Reassessing this evidence may lead the ALJ to reassess the conclusion of whether Plymire needs to nap.

The ALJ also erred when he stated, "Plaintiff worked part time from July to December 2015, but earned enough to pass the substantial gainful activity threshold. (Tr. 21, 170, 173.)" (ECF No. 21 at 7.) The cited records indicate that Plymire earned $1,970.54 in 2015. In 2015, that amount would represent less than two months of substantial gainful activity. *See* Social Security Administration, "Substantial Gainful Activity," available at https://www.ssa.gov/oact/cola/sga.html (noting that monthly substantial gainful activity amounts for a non-blind person in 2105 was $1,090).

Although neither of these errors may merit remand individually, when combined they warrant remand. The court cannot be confident that the ALJ will reach the same conclusion as to the severity of Plymire's symptoms when he properly re-assesses the evidence of Plymire's temporary work and evidence of fatigue.

It also will be necessary for the ALJ on remand to reassess the statement, "Further, the claimant's daily activities, including the full time care for her child, suggest the claimant is capable of greater functioning then (sic) what she has alleged." (Tr. 22.) Statements such as these are infrequently helpful without elaboration.

Plymire's activities of daily living appear to have been minimal and marked by noncompliance with basic hygiene. (Tr. 41, 235, 991, 1019.) In this regard, her activities tend to support her alleged limitations. Moreover, "sheer necessity may compel one to perform tasks at home no matter how painful, such as taking care of one's child." *Forsythe v. Colvin*, 813 F.3d 677, 679 (7th Cir. 2016).

It also appears that Plymire's ability to complete her activities of daily living and care for her child was, at least at times, significantly impaired by her symptoms. For example, a May 1, 2018 progress note states, "Patient reports she was reported for messiness in her home." (Tr. 986.) Although unclear, this seems to reflect some manner of social services report regarding her ability to maintain an appropriate home.

Additionally, the extent to which she was responsible for the care of her child is either unclear or may have changed over time. In her April 2017 application for benefits she reported sharing custody of her son with her boyfriend. (Tr. 160.) During the December 2017 consultative examination she reported being the primary caregiver for her by then two-year-old son. (Tr. 915.) At the hearing she testified that her son lived with her fulltime. (Tr. 37.) During a normal day, however, she said that she spends "very little"

time interacting with him. (Tr. 54.) Although she did not mention anyone else living with her, she testified that, when her boyfriend gets off of work, he takes over caring for her son. (Tr. 44; 52.) Her boyfriend's parents help on the weekends. (Tr. 44.)

Based on these collective defects in the ALJ's decision, remand is necessary to permit the ALJ to reassess the severity of Plymire's symptoms in accordance with SSR 16-3p.

### 4.2. Variable Functioning and the Need to Lie Down

Plymire separately argues that the ALJ failed to appropriately consider her variable functioning and need to lie down. As discussed above, it will be necessary for the ALJ on remand to reassess whether Plymire needs to lie down. If the ALJ accepts that Plymire's statements regarding her fatigue are as severe as she alleges and that she needs to take one or more naps per day, it will be necessary for the ALJ to reassess Plymire's RFC. It is unnecessary for the court to further discuss this alleged error.

However, the ALJ erred by seemingly failing to consider the variable nature of Plymire's bipolar disorder. "[B]ipolar disorder … is by nature episodic and admits to regular fluctuations even under proper treatment." *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011); *see also Bauer v. Astrue*, 532 F.3d 606, 607 (7th Cir. 2008) (discussing the general nature of bipolar disorder); *Rosario v. Saul*, No. 18-CV-1878, 2019 U.S. Dist. LEXIS 142794, at *12-21 (E.D. Wis. Aug. 22, 2019) (discussing the variable nature of bipolar disorder).

The only allusion to Plymire's variable functioning is when the ALJ stated,

> Second, inconsistent with her reports of decreased memory, concentration, multiple bad days per week, and fatigue requiring she nap for multiple hours during the day, the record consistently shows the claimant having presented to her care providers with her memory intact, good concentration and attention, goal-related thought, oriented, and good judgment and responding positively to medication to help her sleep (18F/5, 10, 15, 17, 22, 31, 35; 19F/7).

(Tr. 21.)

Insofar as this statement reflects the ALJ's conclusion that Plymire's functioning did not vary, such a conclusion is contradicted by even a cursory review of just a year of treatment notes of Plymire's psychiatrist, notes that include those which the ALJ cited above:

- "She has 2-3 bad days in a week, with panic episodes. … Compared to our last visit she is doing better, much less frequent panic. It was nearly daily as of our last visit." (Tr. 951 (Jan. 2, 2019).)

- "She describes a recent panic attack." (Tr. 956 (Nov. 30, 2018).)

- "She is having fewer panic attacks …." (Tr. 959 (Nov. 30, 2018).)

- "Patient is in a state of sudden and severe exacerbation of anxiety, with great physical activation." (Tr. 964 (Oct. 31, 2018).)

- "Patient reports she is doing great.… Her only complaint is some anxiety, which is 'just some days, I'm a little bit off.'" (Tr. 966 (Oct. 3, 2018).)

- "She feels her mental health continues 'steady, I feel confident, I'm not depressed all day like I was.' 'I feel like I can live a normal life.'" (Tr. 971 (Aug. 22, 2018).)

- "Depression is stable. Denies any manic highs." (Tr. 976 (June 25, 2018).)

- "Patient reports she is doing much better x 1 week. Energy is up, applied for a job. 'I feel good!'" (Tr. 981 (May 25, 2018).)

- "Patient reports she was reported for messiness in her home, 'I can see my depression's affecting me.' She feels irritable." (Tr. 986 (May 1, 2018).)

- "'I'm really struggling with my depression.' … Poor function. Showering less than once a week. She talks loudly and desperately about the severity of her depression. She states her boyfriend is so concerned he might be calling to tell me about it. She takes care of her son at home. She rests a lot in the daytime but avoids napping. Low motivation and energy make her feel bad about herself." (Tr. 991 (April 10, 2018).)

- "'My depression is not good.' No manic phases since our last visit." (Tr. 996 (March 21, 2018).)

- "She only sleeps 3-4 hours a night. She states her depression is worsening as well. Motivation, energy, concentration are in decline. She's quite discouraged." (Tr. 1001 (Feb. 28, 2018).)

- "Patient reports she's still struggling. Sleeping only 4-5 hours a night on Seroquel. Depression 'is still where it was a few months ago, not good at all.' Motivation, energy, concentration are all a struggle. Denies suicidal ideation. 'But sometimes I feel like giving up. Hopeless.'" (Tr. 1005 (Feb. 7, 2018).)

- "'I am really depressed.' Not functioning well at home. 'I feel so hopeless.' Denies suicidal ideation. This worsened 2 weeks ago. It was not preceded by mania. 'I felt like cutting myself last week' but she was able to make it through safely. It only lasted one night." (Tr. 1009 (Jan. 3, 2018).)

On remand, the ALJ will need to assess whether, and to what extent, Plymire's functioning varies and how any variable functioning may affect Plymire's RFC.

**4.3. Treating Sources**

Plymire argues that the ALJ erred by giving little weight to the opinions of her treating psychiatrist, Dr. John Beld, and therapist, Leah Szemborski. (ECF No. 17 at 19-23.) The ALJ explained that he gave little weight to Beld's opinion because it

15

> appears to [be] based primarily on the claimant's subjective complaint's (sic) as the treatment history demonstrates, as discussed above, the claimant regularly presented with good concentration and attention, goal related thought (18F/5, 10, 15, 17, 22, 31, 35; 19F/7). Dr. Beld's opinion provides no explanation or discussion about his long term and consistent objective findings regarding the normal state of claimant's memory, attention, and judgment, which are in complete juxtaposition to this opinion.

(Tr. 23.)

"In weighing a treating physician's opinion, an ALJ must consider the factors found in 20 C.F.R. § 416.927(c), but need only 'minimally articulate' his reasoning; the ALJ need not explicitly discuss and weigh each factor." *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018) (quoting *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)). A court will "uphold 'all but the most patently erroneous reasons for discounting a treating physician's assessment.'" *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (quoting *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010)).

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Stephens v. Berryhill*, 888 F.3d 323, 328 (7th Cir. 2018) (quoting *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)); *see also* 20 C.F.R. § 404.1527(d)(2)).

"A treating doctor's opinion may be properly discounted, however, if it is based upon the claimant's subjective complaints rather than objective medical evidence." *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016) (citing *Ketelboeter v. Astrue*, 550 F.3d 620,

625 (7th Cir. 2008); *White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005)); *see also Givens v. Colvin*, 551 F. App'x 855, 861 (7th Cir. 2013); *Frankovis-Miesfeld v. Saul*, No. 19-CV-1842, 2021 U.S. Dist. LEXIS 14064, at *16-17 (E.D. Wis. Jan. 26, 2021) (citing *Jozefyk v. Saul*, No. 19-CV-1606, 2020 U.S. Dist. LEXIS 183703, at *15 (E.D. Wis. Oct. 2, 2020)). But in the case of mental health impairments, a patient's subjective complaints are commonly the foundation for diagnosis, assessment, and treatment. If a psychiatrist's opinion could be discounted because it was based primarily on the claimant's subjective complaints, the opinions of treating mental health professionals could be almost categorically disregarded. *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). The Court of Appeals for the Seventh Circuit has rejected this notion. *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015) (citing *Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015)). Thus, outside of instances where there is reason to suspect that, rather than relying on his professional judgment, a provider is merely parroting the claimant's reports, *cf. Jozefyk v. Saul*, No. 19-CV-1606, 2020 U.S. Dist. LEXIS 183703, at *16-17 (E.D. Wis. Oct. 2, 2020) (physician noted his statements regarding the claimant's abilities were "per patient's report"), the fact that an opinion is "based primarily on the claimant's subjective complaints" will generally not be a sufficient reason for discounting a treating mental health professional's opinion.

The ALJ's additional reasons for discounting Beld's opinions, however, may ordinarily constitute "good reasons" for not affording the opinions controlling weight. Nonetheless, because those reasons rested at least in part upon the ALJ's assessment of

17
Case 1:20-cv-00574-WED   Filed 07/26/21   Page 17 of 19   Document 23

Plymire's reports of fatigue, it will be necessary for the ALJ to reassess Beld's opinions on remand.

As for Szemborski's opinions, because she was not an acceptable medical source, her opinion was not entitled to controlling weight. In addition, the ALJ discounted her opinions for largely the same reasons as Beld's— "the claimant regularly presented to her providers with goal-related thought, good attention and concentration, and an intact memory.... [I]t appears that much of her opinion is based on the claimant's subjective complaints." (Tr. 23.) For the reasons stated regarding Beld's opinions, it will be necessary for the ALJ to also reassess Szemborski's opinions on remand.

## 5. Conclusion

The ALJ's assessment of the severity of Plymire's symptoms rested on multiple factual errors. Contrary to the ALJ's statement that Plymire reported fatigue only once, Plymire regularly reported feeling fatigued, tired, or drowsy. The ALJ also erroneously stated Plymire worked at the substantial gainful activity level while suffering from symptoms similar to those she now alleges are disabling. Moreover, the ALJ appears to have overlooked the evidence that Plymire received significant help in caring for her son and that she has exhibited significant difficulty in completing her activities of daily living, such as maintaining basic hygiene and cleanliness of her home. The ALJ also seemingly failed to consider the variable nature of Plymire's bipolar disorder despite records

documenting significant swings in her symptoms. These errors will require reassessment of the opinions of Plymire's mental health providers.

A direct award of benefits, however, is inappropriate because not all factual issues have been resolved, *see Israel v. Colvin*, 840 F.3d 432, 441-42 (7th Cir. 2016), and the evidence is not such that it "can yield but one supportable conclusion." *Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020) (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 26th day of July, 2021.

WILLIAM E. DUFFIN
U.S. Magistrate Judge